Matter of Grant (2022 NY Slip Op 07195)

Matter of Grant

2022 NY Slip Op 07195

Decided on December 20, 2022

Appellate Division, First Department

Per Curiam 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 20, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta,P.J.,
Sallie Manzanet-Daniels
Judith J. Gische
Barbara R. Kapnick
John R. Higgitt, JJ.

Motion No. 2022-03771 Case No. 2006-00048 

[*1]In the Matter of Albert O. Grant, A suspended attorney: Attorney Grievance Committee for the First Judicial Department, Petitioner, Albert O. Grant, (OCA Atty. Reg. No. 1242593.) Respondent.

Disciplinary proceedings instituted by the Attorney Grievance Committee for the First Judicial Department. Respondent was admitted to the Bar of the State of New York at a Term of the Appellate Division of the Supreme Court for the First Judicial Department on February 9, 1976.

Jorge Dopico, Chief Attorney,
Attorney Grievance Committee, New York
(Denice M. Szekely, of counsel), for petitioner.
Respondent pro se.

Per Curiam 

Respondent Albert O. Grant was admitted to the practice of law in the State of New York by the First Judicial Department on February 9, 1976. At all times relevant to this proceeding, respondent maintained a law office within the First Department.
On December 20, 2019, respondent was convicted, upon his plea of guilty, in the United States District Court for the Southern District of New York (SDNY), of conspiracy to commit wire fraud and wire fraud (two counts) in violation of 18 USC §§ 1349 and 1343 and 2, both felonies. On July 28, 2021, he was sentenced to 14 days' imprisonment, followed by three years of supervised release, and directed to make $5,116,699 in restitution and to forfeit $160,000.
Respondent's conviction arose from his participation in a scheme whereby victims paid advance fees for fraudulent standby letters of credit (SBLCs) issued by fake banks. Between 2014 and 2019, respondent acted as escrow agent in these transactions and accepted advance fees from the victims which he was to hold in his escrow account pending issuance of the SBLC. Pursuant to an agreement, he was not to wire the funds out of the account until the victim received the SBLC. Nevertheless, respondent ignored this contractual duty and he immediately wired the victims' monies to his co-conspirators. In addition, he misappropriated $316,699 in law client funds from his attorney escrow account. As part of his sentence, respondent was directed to pay restitution of $4.8 million to the victims of the SBLC scheme (for which he was jointly and severally liable with two other defendants) and $316,699 to the law client, and to forfeit the $160,000 he personally earned from the SBLC scheme.
In January 2020, the Attorney Grievance Committee (AGC) moved for respondent's interim suspension without knowing that he pleaded guilty to the charges a month earlier; nor did respondent report his conviction as required by Judiciary Law § 90(4)(c) and the Rules for Attorney Disciplinary Matters (22 NYCRR) § 1240.12(a). Thus, by order entered June 18, 2020, this Court, pursuant to 22 NYCRR 1240.9(a)(3) and (5), immediately suspended respondent from the practice of law based on his failure to cooperate with the AGC by failing to provide a fully responsive answer to a complaint and bookkeeping records, and uncontroverted evidence demonstrating that he intentionally converted and/or misappropriated client funds maintained in his IOLA account (upon which misconduct his conviction was partially based) (184 AD3d 315 [1st Dept 2020]).
Once aware of his conviction, the AGC determined to await respondent's sentencing before initiating disciplinary action based on his conviction, which it did in December 2021. By March 17, 2022 order, this Court deemed respondent's convictions "serious crimes" (Judiciary Law § 90[4][d], 22 NYCRR 1240.12[c][2]), continued his interim suspension[*2], and appointed a referee to conduct a sanction hearing.
On May 19, 2022, the Referee convened a sanction hearing at which respondent, pro se, testified and introduced documentary evidence. The AGC did not call any witnesses but introduced documentary evidence. Both parties submitted posthearing memoranda in which the AGC argued that respondent should be disbarred; respondent urged the Referee to recommend that he be examined by a psychiatrist selected by the Court prior to issuance of a final order and that he be suspended for at least three years to run concurrent with his period of supervised release. By a report the Referee recommended that respondent be disbarred.
Now, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.8-a(t)(4) and 1240.8(b)(2), the AGC requests that this Court issue an order confirming the Referee's report and sanction recommendation disbarring respondent. Respondent does not oppose and consents to his disbarment.
Before the Referee, respondent, who is 75 years old, maintained that his criminal misconduct was mitigated by his cooperation with federal law enforcement, good character, remorse, health issues, and the fact that he has no prior discipline other than that which resulted from his conviction. However, respondent was previously suspended in New York from 1998 until 2006 for failure to register with OCA and was the subject of a prior disciplinary investigation in New Jersey concerning his role as the escrowee of funds to which two parties asserted competing claims, which matter purportedly settled.
In light of his conviction, on April 29, 2020, the New Jersey Supreme Court imposed a temporary suspension pending further disciplinary proceedings against respondent. By June 1, 2020 affidavit, respondent attested that he would comply with the terms of his temporary suspension in New Jersey, including that he "shall not practice law in any manner in the future" (emphasis added). According to the New Jersey courts' website, respondent remains suspended in that state. Also, as noted, on June 18, 2020, this Court imposed an interim suspension under the terms of which respondent was directed to, inter alia, "desist and refrain from the practice of law in any form, either as principal or agent, clerk or employee of another" and not "to give another an opinion as to the law or its application or advice in relation thereto" (emphasis added). Approximately two years after his interim suspension in New York, respondent submitted an affidavit of compliance, sworn to May 2, 2022, in which he attested that he had "complied with the order of discipline in all respects" and had "also complied with Judiciary Law Sections 478, 479, 484, and 486."
Notwithstanding the aforementioned sworn representations, respondent disclosed to the Referee that he had, among other things, helped a law firm and some other lawyers advising them on wills and trusts. Respondent testified that he left that law firm at the end [*3]of 2016 and "was looking for work basically"; he "called up several clients - - several attorneys to see if [he] could help them doing wills and trusts"; and he also called up two banks and they "sent [him] one or two persons who needed wills to be done." While the record is not clear as to whether any of the aforementioned legal work was done after respondent's April 29, 2020 temporary suspension in New Jersey and his June 18, 202o interim suspension in New York, respondent nevertheless introduced notes taken by his doctor in 2020 and 2021 indicating that he was working on wills and had clients.
In addition, the AGC introduced an internet posting dated May 19, 2022 in which respondent referred to himself as "Albert O. Grant II, Esq. Attorney at Law Admitted in New York and New Jersey" and "Corporate General Counsel" for International Agency for Economic Development (a company which respondent claimed is now "practically defunct.") Respondent, who claimed that he had forgotten to take the posting down, conceded that it held him out as an attorney in good standing. He also continued to use an email address with the word "esquire" in it.
As noted, respondent's June 2020 interim suspension in New York was based in part on his failure to cooperate with the AGC for two years. Respondent attributed this failure to a combination of things, namely, his health issues, his preoccupation with a civil suit brought against him by his former law client I.G. whose funds he had converted and in which he proceeded pro se, and the time demands of his cooperation with federal authorities in their prosecution of his co-conspirators. AGC Staff Counsel referred respondent to the fact that I.G. commenced the civil action in May 2018 and the AGC's investigation began in or about March 2018, and his cooperation with federal law enforcement did not begin until after his February 2019 arrest.
As to his criminal misconduct with respect to I.G, respondent, who is obligated under the restitution judgment in the criminal case to pay I.G. $316,699, nevertheless maintained that his misdeeds as to his former law client were limited to his converting $150,000 of I.G.'s funds via wire transfer to a foreign country; and his only defense to such was his "severe medical condition" and then failing law practice. Respondent cited federal prosecutors' seizure of approximately $4 million from his escrow account against which I.G. and the other defrauded parties could apply for restitution. As noted, a forfeiture order was entered in the criminal case directing respondent to disgorge $160,000 in fees he earned from the SBLC scheme. Respondent has not yet paid this amount; he claimed that he was unable to do so as his only income comes from his monthly social security benefits, 10% of which is garnished by federal authorities and presumably applied toward his restitution obligation. Respondent was also sentenced to 200 hours of community service, which as of the hearing he had not yet [*4]performed due to the COVID-19 situation.
As noted, the Referee recommended that respondent be disbarred, opining that such was warranted by the absence of any mitigation and by the significant aggravation, as discussed below.
The AGC argues that the Referee's sanction recommendation should be confirmed because respondent's criminal conduct, his intentional conversion of escrow funds which belonged to his client I.G., his admittedly engaging in the unauthorized practice of law while suspended, coupled with his false statements denying such in the affidavits of compliance he submitted in New York and New Jersey, the Referee's finding that he failed to establish that his medical issues "caused, exacerbated, or influenced" his "illegal and unethical behavior", and the relevant precedent concerning the intentional conversion of client funds warrants his disbarment. As to the assistance he provided federal authorities, the AGC maintains that "[w]hile respondent cooperated with prosecutors against his fellow co-conspirators, he did so under duress with the selfish motive of reducing his own punishment."
In his response, respondent withdrew any objection to disbarment.
This Court's precedent makes clear that "[a]bsent extremely unusual mitigating circumstances," which the Referee did not find in this case, intentional conversion of client or third-party funds warrants disbarment (Matter of Lubell, 190 AD2d 479, 481 [1st Dept 1993]; see also Matter of Bernier, 177 AD3d 37 [1st Dept 2019]; Matter of Bloomberg, 154 AD3d 75 [1st Dept 2017]; Matter of Ballner, 140 AD3d 115 [1st Dept 2016]; Matter of Babalola, 139 AD3d 61 [1st Dept 2016]).
In addition, respondent violated the terms of his temporary/interim suspensions in New Jersey and New York by engaging in the unauthorized practice of law, continuing to hold himself out as an attorney in good standing, and falsely representing in his June 1, 2020 and May 2, 2022 affidavits that he had complied with the terms of his New Jersey and New York suspensions, which conduct standing alone supports his disbarment (see e.g. Matter of Gonchar, 166 AD3d 91 [1st Dept 2018], lv denied 32 NY3d 914 [2019]; Matter of Rosabianca, 131 AD3d 215 [1st Dept 2015]).
Moreover, the seriousness of respondent's wire fraud convictions related to his participation in the fraudulent SBLC scheme for which he is jointly and severally liable to make $4.8 million in restitution to the victims thereof and to forfeit the $160,000 he personally earned therefrom only adds to the case for his disbarment (see e.g. Matter of Klein, 147 AD3d 73 [1st Dept 2016]; Matter of Fasciana, 132 AD3d 144 [1st Dept 2015]).
Accordingly, the motion to confirm the Referee's report and recommendation should be granted and respondent is disbarred and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, nunc pro tunc, as of December 20, 2019, the date of his felony conviction in the SDNY.
All concur.
IT IS ORDERED that [*5]the motion of petitioner the Attorney Grievance Committee for the First Judicial Department pursuant to 22 NYCRR 1240.8(b)(2) and 603.8-a(t)(4), to confirm the Referee's report and recommendation, is granted, and respondent Albert O. Grant is disbarred, and his name stricken from the roll of attorneys in the State of New York, effective nunc pro tunc to December 20, 2019, and
IT IS FURTHER ORDERED that, effective immediately, pursuant to Judiciary Law § 90, respondent Albert O. Grant is commanded to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and
IT IS FURTHER ORDERED that respondent Albert O. Grant shall comply with the rules governing the conduct of disbarred or suspended attorneys (see NYCRR 1240.15)), which are made part hereof; and
IT IS FURTHER ORDERED that if respondent Albert O. Grant has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency.
Entered: December 20, 2022